ANTHONY "T.J." QUAN                    7903
THE QK GROUP LLLC
Pacific Guardian Center-Makai Tower
733 Bishop Street, Suite 2525
Honolulu, Hawaii 96813
Phone: (808) 358-7345
Email: tjquan@qkgrouplaw.com

GEOFFREY M. WYATT          [D.C. 498650]
(*Pro Hac Vice*)
NICOLE M. CLEMINSHAW [D.C. 888314401]
(*Pro Hac Vice*)
ANDREW C. HANSON          [D.C. 888273742]
(*Pro Hac Vice*)
ZACHARY W. MARTIN          [D.C. 888304074]
(*Pro Hac Vice*)
1440 New York Avenue N.W.
Washington, D.C. 20005
Phone:  (202) 371-7000
Email: geoffrey.wyatt@probonolaw.com

NEIL C. WEARE                      [D.C. 997220]
(*Pro Hac Vice*)
Equally American Legal Defense and Education
Fund
1300 Pennsylvania Ave., NW, #190-413
Washington, D.C. 20004
Phone: (202) 304-1202
Email: nweare@equallyamerican.org

VANESSA WILLIAMS                [Guam 1101]
(*Pro Hac Vice*)
Law Office of Vanessa Williams P.C.
414 West Soledad Avenue, GCIC Building,
Suite 500
Hagåtña, Guam 96910
Phone:  (671) 477-1389

PAMELA COLON        [U.S. Virgin Islands 801]
(*Pro Hac Vice*)

Law Offices of Pamela Lynn Colon, LLC
27 & 28 King Cross Street, First Floor
Christiansted, Saint Croix, Virgin Islands 00820
Phone:  (340) 719-7100

Attorneys for Plaintiffs
RANDALL JAY REEVES,
VICENTE TOPASNA BORJA,
EDMUND FREDERICK SCHROEDER, JR.,
RAVINDER SINGH NAGI,
PATRICIA ARROYO RODRIGUEZ,
LAURA CASTILLO NAGI, and
EQUALLY AMERICAN

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RANDALL JAY REEVES, VICENTE TOPASNA BORJA, EDMUND FREDERICK SCHROEDER, JR., RAVINDER SINGH NAGI, PATRICIA ARROYO RODRIGUEZ, LAURA CASTILLO NAGI, and EQUALLY AMERICAN, <br><br> Plaintiffs, <br><br> v. <br><br> SCOTT NAGO, <br>   in his official capacity as the Chief <br>   Election Officer for the Hawaii Office <br>   of Elections, <br><br> GLEN TAKAHASHI, <br>   in his official capacity as Clerk of the <br>   City and County of Honolulu, | No. CV 20-00433 JAO-RT <br><br> Honorable Judge Jill A. Otake <br><br> Honorable Magistrate Judge Rom Trader <br><br> **PLAINTIFFS' SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S MARCH 5, 2021 ORDER; CERTIFICATE OF SERVICE** |

KATHY KAOHU,
  in her official capacity as Clerk of the
  County of Maui,

UNITED STATES OF AMERICA,

LLOYD J. AUSTIN III,[1]
  in his official capacity as the Secretary
  of Defense,

FEDERAL VOTING ASSISTANCE
  PROGRAM, and

DAVID BEIRNE,
  in his official capacity as Director of the
  Federal Voting Assistance Program,

                Defendants.

**PLAINTIFFS' SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S**
**MARCH 5, 2021 ORDER**

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Lloyd J. Austin III (in his official capacity as the Secretary of Defense) is automatically substituted as a defendant for former Acting Secretary of Defense Christopher C. Miller, who likewise automatically substituted for the original defendant, Secretary of Defense Mark Esper.

Plaintiffs respectfully submit this brief in response to the Court's order to address its power to issue the remedies sought in this case, with reference to *M.S. v. Brown*, 902 F.3d 1076 (9th Cir. 2018) (ECF No. 94).

As explained below, the Court's equitable powers are well suited to the task of remedying equal-protection violations involving voter eligibility.  Under equal-protection principles, "[o]nce a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies."  *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971).

In many ways, equal-protection cases involving voter eligibility are the paradigm example of how courts use their equitable powers to remedy constitutional violations.  For example, in *Evans v. Cornman*, 398 U.S. 419 (1970), the Supreme Court upheld an equal-protection challenge by residents of the National Institutes of Health ("NIH") who were being denied the right to vote in Maryland based on the decision of a county board that they did not meet the residency requirements set forth in the Maryland Constitution because NIH is a federal enclave.  The district court in *Cornman* had held that construing Maryland's Constitution to deem residents of NIH not to be residents of Maryland for purposes of voting "denies them the equal protection of the laws" guaranteed by the Constitution.  *Cornman v. Dawson*, 295 F. Supp. 654, 655 (D. Md. 1969).

With respect to remedy, the district court granted the plaintiffs' request for a declaratory judgment and injunctive relief to ensure they would be eligible to vote in future Maryland elections.  *Id.* at 655, 660.  The Supreme Court affirmed.

The Supreme Court and the courts of appeals have supported a similar approach to remedy in numerous other cases involving equal protection and voter eligibility.[2]  *See, e.g.*, *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621 (1969) (requiring New York to accept votes for school district from persons without children or tax liability); *Fish v. Schwab*, 957 F.3d 1105, 1117 (10th Cir. 2020) (affirming injunction requiring state to "provide applicants with certificates of [voter] registration"); *cf. Carrington v. Rash*, 380 U.S. 89, 89 & n.1, 96-97 (1965) (concluding Texas provision that denies right to vote to military service members who move to the state violates equal protection and noting that a district court in another case had declared the provision unconstitutional).

The relief requested here is what courts routinely provide in equal-protection cases and is well within the Court's power to award.  As in *Cornman* and the other cases cited above, plaintiffs here seek an order declaring that certain restrictions on

---

[2] Courts have issued more sweeping remedies to address equal-protection violations than simply requiring states to allow a person to vote, for example requiring states to revamp their election system to comport with the one-person, one-vote principle, *e.g.*, *Gray v. Sanders*, 372 U.S. 368 (1963), requiring boards of education to draw up plans to desegregate school systems, *Swann*, 402 U.S. at 11, and directing corrective action by local housing authorities to remedy the effects of discriminatory housing policies, *Hills v. Gautreaux*, 425 U.S. 284 (1976).

2

voting are an unconstitutional denial of equal protection, along with an order enjoining defendants to allow plaintiffs to vote.  While some of the specific facts of plaintiffs' case are unique, in remedial terms this is simply a garden variety equal-protection case where plaintiffs challenge discriminatory voter-eligibility provisions that deny them the right to vote and seek declaratory and injunctive relief to remedy that discrimination by allowing them to vote.

Critically, this case is unlike *M.S. v. Brown*, in which the plaintiffs sought an order that would compel state officials to enact (or treat as enacted) a specific legislative proposal that had ***failed to gain approval*** through the state referendum process.  The proposal at issue there would have made individuals who could not prove legal immigration status eligible for "driver cards" that would authorize the operation of a motor vehicle.  The plaintiffs there desired a driver card and challenged the rejection of the referendum as unconstitutionally discriminatory.

The decision in *M.S.* was expressly rooted in the unique posture of challenging an ***un***-enacted law, with the court emphasizing the "unusual circumstances" of the case.  902 F.3d at 1086.  To avoid possible misinterpretation, the court stressed the narrow scope of its holding:  "federal courts undoubtedly have the power to strike down existing laws as unconstitutional," but the plaintiffs in *M.S.* "presented only . . . a challenge to the State's failure to" enact a law.  *Id.* at 1088.  That distinction was dispositive to the case.

This case does not challenge the failure to enact a law, making *M.S.* inapposite.  Instead, it challenges laws already on the books that discriminate by denying voter eligibility to certain disfavored citizens who move outside the 50 states while protecting it for other favored citizens who are similarly situated.  As *M.S.* and other Ninth Circuit and Supreme Court precedents make clear, "federal courts have the power to remedy injuries flowing from a discriminatory law." *Id.* at 1091.[3]  With this context, plaintiffs answer the Court's questions as follows:

## RESPONSES TO THE COURT'S QUESTIONS

1.     **Assuming Plaintiffs' injuries are traceable to UOCAVA, would the declaratory relief requested in paragraph a of the Second Amended Complaint's ("SAC") prayer for relief – declaring definitions unconstitutional – without more, allow Plaintiffs to receive absentee ballots?  If yes, describe mechanically how this would occur.**

As in *Cornman* and the other voter eligibility cases cited above, plaintiffs here are seeking a remedy that would allow them to vote in two simultaneous steps.  The first step is a declaratory judgment that the discriminatory provision restricting plaintiffs' eligibility to vote violates equal protection.  The second step is an injunction that would remedy that violation by requiring defendants to include plaintiffs in the class of persons eligible to vote.

---

[3]     The Ninth Circuit further noted that courts may have the authority to issue remedies even in the latter context where fundamental rights are at stake, 902 F.3d at 1091 – which is alleged here – further rendering *M.S.* inapposite.

Declaratory relief alone *could* trigger defendants to allow plaintiffs to vote. The mechanics of this result would be as follows. A court "must assume" that defendants would take steps needed to correct a constitutional violation declared by the Court. *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 701 (9th Cir. 1992). Here, that would entail a declaration that 52 U.S.C. § 20310 is unconstitutional in that it defines "United States" to include "the Commonwealth of Puerto Rico, Guam, the Virgin Islands, and American Samoa," and defendants would then enforce UOCAVA (directly and through HAR § 3-177-600) without regard to this provision. But plaintiffs' requested injunctive relief is necessary to guarantee the ability to vote absentee in Hawaii, and issuance of both remedies is routine.[4]

*M.S.* does not suggest otherwise. In that case, the plaintiffs sought a declaration that their rights were violated by the voters' rejection of the ballot initiative in question. 902 F.3d at 1084. Such a declaration would not mean that the plaintiffs would receive a driver card (the desired relief) because state officials would be powerless to treat the initiative as though it had been enacted into law based only on a declaration that its rejection by the voters was discriminatory. *See id.* There is no parallel here, where plaintiffs are challenging an *existing* law that discriminates to make plaintiffs ineligible to vote. *M.S.* is simply inapposite.

---

[4] As set forth in *Rincon Band of Mission Indians v. Harris*, 618 F.2d 569, 575 (9th Cir. 1980), the Declaratory Judgment Act expressly authorizes injunctive relief to give effect to declarations.

5

2. **Assuming Plaintiffs' injuries are not traceable to UOCAVA, would the declaratory relief, applied only to UMOVA and HAR § 3-177-600, without more, allow Plaintiffs to receive absentee ballots?  If yes, describe mechanically how this would occur.**

As explained above, remedies in equal-protection cases typically proceed in two steps:  declaratory judgment plus an injunction.  Thus, while a favorable declaratory judgment alone may trigger defendants to allow plaintiffs the ability to vote by absentee ballot in Hawaii,[5] the traditional approach – the approach requested here – would be for the Court to provide both declaratory and injunctive relief.  Once again, *M.S.* does not counsel otherwise, and is simply inapposite here.[6]

_____

[5] As with UOCAVA, a declaration as to UMOVA would operate as to the definitional section of the statute, declaring it unconstitutional to the extent it defines the "United States," when used in the territorial sense, to include "Puerto Rico, the United States Virgin Islands, and any territory or insular possession subject to the jurisdiction of the United States."  H.R.S. § 15D-2.

[6] Although *M.S.* separately expressed federalism concerns with the remedies sought in that case, those concerns grew directly out of the distinct feature of that case – the plaintiffs' request for an order that would require the state to treat an ***unenacted*** proposal as having the force of law.  Indeed, the Ninth Circuit went out of its way to stress that, at least under the facts presented in that case, any barriers posed by federalism concerns were entirely coextensive with the broader limitations on a federal court's equitable powers.  902 F.3d at 1090.  Those concerns have no place here, where plaintiffs are seeking routine declaratory and injunctive relief from an unconstitutional state law, requiring no greater an exercise in remedial power than that exercised in cases like *Cornman*, *Fish*, and *Buschemi v. Bell*, 964 F.3d 252, 260-61 (4th Cir. 2020), *cert. denied*, No. 20-897, 2021 WL 666468 (U.S. Feb. 22, 2021) (mem.).

**3.     Does the Court have the power to award the injunctive relief requested in paragraph b of the SAC's prayer for relief?  Provide legal authority for an affirmative or negative response.**

The Court has the power to issue the relief in Paragraph B, which simply asks this Court to enjoin defendants from enforcing a discriminatory restriction on voter eligibility that violates equal protection.  As demonstrated by the equal-protection cases involving voter eligibility cited above, doing so is a natural application of this Court's equitable powers.  Indeed, plaintiffs are not aware of *any* case where a court has found that a restriction on voter eligibility violates equal protection but that the court was without power to award injunctive relief.[7]

Courts have broad authority to "exercise [their] equitable powers to ensure compliance with the law" and to "mould [a] decree to the necessities of the particular case."  *Nw. Env't Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 680 (9th Cir. 2007) (citation omitted) (compelling federal agency to fund certain project); Dan B. Dobbs & Caprice L. Roberts, *Law of Remedies: Damages, Equity, & Restitution* 66 (3d ed. 2018) ("Discretion of equity courts is long established."). This power is especially broad in cases involving public rights, such as government actions alleged to violate the Constitution.  *See Nw. Env't Def. Ctr.*, 477 F.3d at 679-80 & n.9; 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice &*

---

[7] An exception exists where equitable relief could disrupt an imminent election, *e.g.*, *Reynolds v. Sims*, 377 U.S. 533, 585 (1964), but that is not at issue here.

*Procedure* § 2944 (3d ed. Oct. 2020 Update) ("[I]f a constitutional violation is established, usually no further showing of irreparable injury is necessary" to justify an injunction.).

In keeping with these principles, courts in similar circumstances routinely enjoin state actors to take certain affirmative steps to bring themselves into compliance with federal constitutional law, as in *Cornman* and the other cases noted in the introduction above. *See also Fish*, 957 F.3d at 1111, 1120-21; *Buschemi*, 964 F.3d at 260-61; *Ariz. Democratic Party v. Hobbs*, 485 F. Supp. 3d 1073, 1096 (D. Ariz. 2020), *stayed on other grounds*, 976 F.3d 1081 (9th Cir. 2020), *appeals pending*.

In *Fish*, for example, the district court "entered a permanent injunction" that barred enforcement of certain proof-of-citizenship requirements and required certain persons be provided "certificates of [voter] registration." 957 F.3d at 1111, 1117. The upshot was to compel the state to enroll "30,000 voters whose applications" had been rejected. *Id.* at 1121. The Tenth Circuit "ha[d] no doubt" that the case was redressable. *Id.* at 1120. And *Buschemi* – which cited *M.S.* on redressability, *see* 964 F.3d at 259 (citing *M.S.*, 902 F.3d at 1083) – went further. In that case, which involved ballot access, the Fourth Circuit cited two Supreme Court cases for the proposition that "[i]t is well-settled that a court has equitable authority to order" government officials to place a candidate's name on a ballot.

8

*Buschemi*, 964 F.3d at 261-62 (citing *Williams v. Rhodes*, 393 U.S. 23 (1968) and *McCarthy v. Briscoe*, 429 U.S. 1317 (1976) (Powell, J., in chambers)).

The injunction plaintiffs seek in Paragraph B is directly supported by this precedent.  At bottom, it would simply enjoin defendants from continuing to enforce unconstitutional voter-eligibility rules – ones that deny absentee ballots to certain citizens from Hawaii who move outside the 50 states while providing them to other citizens who are similarly situated.  The injunction's effect, precisely as in *Cornman* and *Fish*, would be to compel defendants to provide and accept ballots that, under current federal and state statutory law, they otherwise would not.

The relief sought is also entirely consistent with *M.S.* for the reasons explained above.  *M.S.* acknowledged that when a plaintiff "challenge[s] the constitutionality of [an] existing statute . . . federal courts undoubtably have the power to strike" it down.  902 F.3d at 1088.

**4.** **Does this case fall under the narrow set of circumstances in which the Court has the authority to order government officials to implement or enact legislation or take other action?  *See, M.S.*, 902 F.3d at 1088 n.14.**

This case falls within the "narrow set of circumstances" outlined in *M.S.*, though it need not do so because the contemplated relief would not, as in *M.S.*, "order government officials to implement or enact legislation."  As detailed above, *M.S.* addressed the circumstances in which a challenge was made to a proposed law that ***was not enacted***, and does not govern routine voter eligibility equal-

9

protection cases like this one that challenge laws **already on the books**.

Nevertheless, as this Court's order notes, *M.S.* recognized a narrow set of

circumstances in which even a failure to enact a law could be within a court's

power to remedy – including when a suit seeks "to vindicate fundamental rights."

902 F.3d at 1088 & n.14.  This is such a case because it seeks to vindicate voting

rights, which are fundamental in nature.  *Yick Wo v. Hopkins*, 118 U.S. 356, 370

(1886) (voting is the "fundamental political right, . . . preservative of all" others);

*Charfauros v. Bd. of Elections*, 249 F.3d 941, 950 (9th Cir. 2001) (right to vote in

the NMI is "a 'fundamental political right'") (citation omitted).

5.    **Assuming Plaintiffs lack standing, could amendment of the SAC – which the Court is authorized to permit–overcome the asserted defects?**

Amendment of the complaint would likely address any standing

deficiencies.  Plaintiffs anticipate they could amend the complaint to further clarify

that the remedy sought does not necessitate an order to enact legislation within the

meaning of *M.S.*, and they request leave to do so in the event of an adverse ruling

on standing.  Indeed, plaintiffs are not aware of any court that has found plaintiffs

who are unable to vote because of discriminatory voter-eligibility requirements

lack standing to bring an equal-protection challenge.

DATED: Honolulu, Hawaii, March 19, 2021

/s/ *Anthony "T.J." Quan*
ANTHONY "T.J."  QUAN
GEOFFREY M. WYATT

10

(*Pro Hac Vice*)
NICOLE M. CLEMINSHAW
(*Pro Hac Vice*)
ANDREW C. HANSON
(*Pro Hac Vice*)
ZACHARY W. MARTIN
(*Pro Hac Vice*)
VANESSA WILLIAMS
 (*Pro Hac Vice*)
PAMELA COLON
 (*Pro Hac Vice*)
NEIL C. WEARE
 (*Pro Hac Vice*)
*Attorneys for Plaintiffs*