IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RANDALL JAY REEVES, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>SCOTT NAGO, in his official capacity as Chief Election Officer for the Hawaii Office of Elections, *et al.*,<br><br>Defendants. | CIVIL NO. 20-00433 JAO-RT<br><br>ORDER GRANTING FEDERAL DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION |

**ORDER GRANTING FEDERAL DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION**

Plaintiffs Randall Jay Reeves, Vicente Topasna Borja, Edmund Frederick

Schroeder, Jr., Ravinder Singh Nagi, Patricia Arroyo Rodriguez, Laura Castillo

Nagi, and Equally American Legal and Defense and Education Fund (collectively,

"Plaintiffs") challenge the constitutionality of the Uniformed and Overseas

Citizens Absentee Voting Act ("UOCAVA"), codified at 52 U.S.C. §§ 20301 to

20311, Hawaii's Uniform Military and Overseas Voters Act ("UMOVA"), codified

at Hawaiʻi Revised Statutes ("HRS") §§ 15D-1 to -18, and Hawaiʻi Administrative

Rules ("HAR") § 3-177-600.  The Federal Defendants — United States of

America, Lloyd J. Austin, III,[1] Federal Voting Assistance Program, and David Beirne — seek dismissal for lack of Article III standing.[2]  For the following reasons, the Court GRANTS the Federal Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction.

BACKGROUND

I.   <u>Factual History</u>

Plaintiffs — all former Hawaiʻi residents — allege that UOCAVA, UMOVA, and HAR § 3-177-600 preclude them from voting in Hawaiʻi by absentee ballot for President and Hawaii's U.S. congressional delegation because they currently reside in Guam or the U.S. Virgin islands.  ECF No. 73 ¶¶ 2, 14–20. Enacted in 1986, UOCAVA's purpose was to "facilitate absentee voting by United States citizens, both military and civilian, who are overseas."  *Id.* ¶ 44 (citing H.R. Rep. No. 99-765, at 5 (1986), *reprinted in* 1986 U.S.C.C.A.N. 2009, 2009)). Overseas voters include absent uniformed services voters and those residing outside the United States who (1) are qualified to vote in the place they were last domiciled before leaving the United States and (2) who would be qualified to vote

---

[1]  *See* Fed. R. Civ. P. 25(d) (automatic substitution of an official by successor); ECF No. 101 at 2 n.1.

[2]  Defendants Scott Nago ("Nago"), Glen Takahashi ("Takahashi"), and Kathy Kaohu ("Kaohu") (collectively, "Hawaiʻi Defendants") join in the Federal Defendants' redressability arguments.  ECF Nos. 78–80.

in the place last domiciled before leaving the United States but for their current residence outside the United States. *Id.* ¶ 48 (citing 52 U.S.C. § 20310(5)). "States" and the territorial use of "United States" include a state of the United States, the District of Columbia, Puerto Rico, Guam, the Virgin Islands, and American Samoa. *Id.* ¶ 49 (citing 52 U.S.C. § 20310(6) & (8)). The Northern Mariana Islands ("NMI") is excluded from these definitions.[3] *Id.* ¶ 50.

UMOVA authorizes U.S. citizens who are former Hawaiʻi residents and living outside the United States to vote by absentee ballot in federal elections. *Id.* ¶¶ 2, 52 (citing HRS § 15D-1 to -18). It defines "United States" as "the several states, the District of Columbia, Puerto Rico, the United States Virgin Islands, and any territory or insular possession subject to the jurisdiction of the United States." *Id.* ¶ 53 (quoting HRS § 15D-2). While UMOVA does not itself distinguish between the NMI and other territories, through administrative rules, Hawaiʻi allows former Hawaiʻi citizens now residing in the NMI to vote absentee in federal elections like overseas voters.[4] *Id.* (citing HAR § 3-177-600). UMOVA

---

[3] The Federal Defendants — without dispute from Plaintiffs — explain that UOCAVA was enacted prior to the NMI officially joining the United States and so the NMI's exclusion from the definitions is likely the result of happenstance. *See* ECF No. 75 at 15.

[4] HAR § 3-177-600 authorizes the issuance of ballot packages to voters covered by UOCAVA. Because UOCAVA excludes the NMI from the definition of "states" and territorial use of "United States," U.S. citizens residing in the NMI are treated as overseas voters and therefore able to vote absentee.

additionally permits absentee voting by U.S. citizens born outside the United States who have never resided in the United States or registered to vote in any state, if their parents or guardians last resided in Hawaiʻi and would have been eligible to vote there before moving overseas.  *Id.* ¶ 54 (citing HRS § 15D-2).  As a result, U.S. citizens who have never resided in the United States can vote in Hawaii's federal elections while former Hawaiʻi residents lose the right to participate in such elections if they move to Guam, the U.S. Virgin Islands, American Samoa, or Puerto Rico.  *Id.*

Plaintiffs challenge the distinction in UOCAVA, UMOVA, and HAR § 3-177-600 between U.S. citizens residing in the NMI, other insular territories, or in a foreign country, with those residing in Guam, the U.S. Virgin Islands, American Samoa, or Puerto Rico.  *Id.* ¶¶ 2, 51, 62.

II.   Procedural History

Plaintiffs commenced this action on October 8, 2020.  On October 29, 2020, they filed an Amended Complaint.  ECF No. 39.  Pursuant to the Stipulation Permitting Leave to Plaintiffs to File Second Amended Complaint and Order, ECF No. 72, Plaintiffs filed a Second Amended Complaint ("SAC") on December 18, 2020.  ECF No. 73.  The SAC asserts a single 42 U.S.C. § 1983 claim – UOCAVA and UMOVA violate the Equal Protection and Due Process Clauses of the Fifth

and Fourteenth Amendments[5] by protecting the voting rights of certain former Hawaiʻi residents based on whether they live overseas or in specified territories. *Id.* at 38.

Plaintiffs pray for:  (1) an order declaring that UOCAVA, UMOVA, and HAR § 3-177-600 violate the Fifth Amendment, the Fourteenth Amendment, and 42 U.S.C. § 1983 "by defining 'United States' and 'territorial limits of the United States' in a manner that discriminates among former Hawaiian residents who are disenfranchised from voting for President or voting representation in Congress because they live overseas outside the States"; (2) an order enjoining Defendants "to accept applications to vote absentee in future federal elections in Hawaii from Individual Plaintiffs . . . [thereby] expanding voting rights to all such former state citizens, including those living in each Territory"; (3) attorneys' fees and costs; and (4) further just and appropriate relief.  *Id.* at 40–41.

On January 14, 2021, the Federal Defendants filed the present Motion to Dismiss for Lack of Subject-Matter Jurisdiction ("Motion").  ECF No. 74.  The next day, the Hawaiʻi Defendants filed Joinders.  ECF Nos. 78–80.  On February 5,

---

[5]  Plaintiffs also allege a violation of 42 U.S.C. § 1983 but "one cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything."  *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 978 (9th Cir. 2004) (some internal quotation marks and citation omitted).  This is because § 1983 "does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials."  *Id.* (internal quotation marks and citation omitted).

2021, Plaintiffs filed their Opposition, ECF No. 84, and the Hawai'i Defendants filed partial oppositions.  ECF Nos. 85–87.  The Federal Defendants filed their Reply on February 12, 2021.  ECF No. 88.  The Court heard the Motion on March 5, 2021.  ECF No. 93.

At the Court's request, the parties filed supplemental briefing.  ECF Nos. 94, 96, 98–101.

## LEGAL STANDARD

Under Federal Rule of Procedure ("FRCP") 12(b)(1), a district court must dismiss a complaint if it lacks subject matter jurisdiction to hear the claims alleged in the complaint.  *See* Fed. R. Civ. P. 12(b)(1).  "Standing is a threshold matter central to our subject matter jurisdiction."  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under [FRCP] 12(b)(1)."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (emphasis and citations omitted).  In determining constitutional standing, the trial court has the authority "to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing."  *Id.* (internal quotation marks and citations omitted).  The court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party" when "ruling on a motion to dismiss for want of

6

standing."[6]  *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see Confederated Tribes & Bands of Yakama Nation v. Yakima County*, 963 F.3d 982, 989 (9th Cir. 2020) (quoting *Warth*, 422 U.S. at 501).

DISCUSSION

The Federal Defendants seek dismissal for lack of subject matter jurisdiction due to the absence of Article III standing, namely traceability and redressability. The Hawai'i Defendants join in the Federal Defendants' redressability argument but refute the contention that Plaintiffs' injuries are not traceable to the Federal Defendants.

Article III of the Constitution limits the jurisdiction of the federal courts to certain "Cases" and "Controversies."  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).   To establish "standing" to sue in federal court, a plaintiff must have "'(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'"  *Gill v. Whitford*, __ U.S. __, 138 S. Ct. 1916, 1929 (2018) (quoting *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1547 (2016)).  As the party invoking federal jurisdiction, the plaintiff must establish these elements.  *See*

---

[6]  Attached to Plaintiffs' Opposition are multiple amicus briefs submitted in connection with a petition for writ of certiorari previously before the Supreme Court.  The Court declines to consider these briefs, as they are from different proceedings and the amici have not sought leave to participate in this litigation.

*Spokeo*, __ U.S. __, 136 S. Ct. at 1547 (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).  At the pleading stage of a case, "the plaintiff must 'clearly . . . allege facts demonstrating' each element."  *Id.* (alteration in original) (quoting *Warth*, 422 U.S. at 518) (footnote omitted).  A plaintiff exclusively seeking declaratory and injunctive relief is required to additionally "show a very significant possibility of future harm."  *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (citation omitted).  And a plaintiff "must demonstrate standing separately for each form of relief sought."  *Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 815 (9th Cir. 2017) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)) (internal quotation marks omitted)).

When a plaintiff lacks constitutional standing, a suit "is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit."  *City of Oakland v. Lynch*, 798 F.3d 1159, 1163 (9th Cir. 2015) (internal quotation marks and citation omitted); *see City of Los Angeles v. County of Kern*, 581 F.3d 841, 845 (9th Cir. 2009).

A.    Injury in Fact

Plaintiffs allege that they are unable to vote absentee in federal elections in Hawai'i and that such practice is discriminatory because some similarly situated former residents living overseas or in the NMI are able to vote.  "To establish

injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, __ U.S. __, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *see Maya*, 658 F.3d at 1069. Allegations of possible future injury are insufficient; the "threatened injury must be *certainly impending* to constitute injury in fact." *Clapper*, 568 U.S. at 409 (internal quotation marks and citation omitted).

The Federal Defendants do not deny that the inability to vote is an Article III injury, arguing instead that the alleged disparate treatment caused by UOCAVA, standing alone, is not an injury in fact.[7]  ECF No. 88 at 13. They challenge demonstrable injury, and also oddly assert that Plaintiffs recast their injury as "unequal treatment" in response to the Motion, *id.* at 12, when Plaintiffs' equal protection argument is the premise of this action and is clearly articulated in the SAC. Indeed, Plaintiffs' sole claim for relief asserts: "By treating similarly situated former state residents differently based on where they reside overseas, UOCAVA and Hawaii UMOVA violate the equal-protection and due process guarantees of the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983." ECF

---

[7]  At the hearing, their counsel conceded that while the parties disagree about the nature of Plaintiffs' injury, there is no dispute that Plaintiffs have suffered an injury.

No. 73 ¶ 63.  Allegations throughout the SAC point to this disparate treatment.[8]  *Id.*

¶ 6 ("The federal and state laws at issue violate the fundamental guarantee of equal

protection with respect to voting rights.  Congress selectively extended the

franchise only to some disenfranchised U.S. citizens residing outside the States,

while denying it to others who are similarly situated."); *id.* ¶ 12 ("Plaintiffs are

individuals who are injured by virtue of the Defendants' disparate treatment of

former state residents residing in the Territories and overseas, along with Equally

American.").

Although they challenge standing, the Hawaiʻi Defendants recognize that

disparate treatment is Plaintiffs' central allegation.  ECF No. 85 at 7 ("[T]o the

extent Plaintiffs are alleging that the named Defendants erected a barrier that

makes it more difficult for former state residents living in Guam and the U.S.

Virgin Islands to vote absentee in Hawaii in federal elections than it is for former

state residents living in CNMI, Plaintiffs' injury in fact is the denial of equal

treatment, not the inability to vote."); ECF No. 86 at 4 ("The gravamen of the

Second Amended Complaint is the alleged equal protection violation based on the

disparate treatment of former residents of Hawaii who now reside in the United

States territories and want to vote absentee in federal elections, depending on

---

[8]  In fact, Plaintiffs devote an entire section of the SAC to equal protection
principles.  ECF No. 73 ¶¶ 56–62.

whether they live in the Commonwealth of the Northern Marianas (CNMI) or another territory.").

Plaintiffs' equal protection claim appears to be based on two theories: (1) disparate treatment between residents of territories and residents living overseas and in the NMI and (2) disparate treatment between territories. Under either theory, Plaintiffs have sufficiently alleged an injury in fact for standing purposes. *See Segovia v. United States*, 880 F.3d 384, 387–88 (7th Cir. 2018) (concluding that the plaintiffs, who "argued that the UOCAVA and Illinois law violate the Due Process and Equal Protection Clauses by permitting residents of some territories to vote in federal elections but not others" and "that the statutes infringe upon their right to travel guaranteed by the Due Process Clause," had "suffered an injury-in-fact sufficient to confer Article III standing").

B.     Fairly Traceable to UOCAVA or the Federal Defendants

The Federal Defendants argue that Plaintiffs' injuries are not traceable to them or UOCAVA because UMOVA, not UOCAVA, prevents Plaintiffs from voting absentee in Hawaiʻi. ECF No. 75 at 20–21. According to the Federal Defendants, UOCAVA creates a statutory floor for absentee voting, but states are free to accept absentee ballots from individuals who move to other places within the United States, as defined by UOCAVA. *Id.*

11

Plaintiffs counter that both UOCAVA and UMOVA deprive them of the ability to vote, as UOCAVA provides for discriminatory treatment, and UMOVA comports with UOCAVA's requirements. ECF No. 84 at 21. The Hawai'i Defendants emphasize that UOCAVA's floor treats former state residents living in the NMI differently from those living in other territories, and Hawai'i is therefore compelled to extend absentee voting rights only to those former residents living in the NMI. ECF No. 85 at 3, 9–10; ECF No. 86 at 4; ECF No. 87 at 3. Takahashi and Kaohu add that causation is established because UOCAVA's mandatory provisions are the source of the disparate treatment and dictate Hawaii's absentee voting practices.[9] ECF No. 86 at 4–6; ECF No. 87 at 3.

The causation inquiry focuses on "whether the alleged injury can be traced to the defendant's challenged conduct, rather than to that of some other actor not before the court." *See Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1152 (9th Cir. 2000) (citations omitted). In other words, "the causal connection put forward for standing purposes cannot be too speculative, or rely on conjecture about the behavior of other parties, but need not be so airtight at this stage of the litigation as to demonstrate that the plaintiffs would succeed on the merits." *Id.* (citation omitted); *see Canyon County v. Syngenta Seeds, Inc.*, 519

---

[9] Takahashi also points to the federal government's enforcement powers to sue states failing to comply with UOCAVA. ECF No. 86 at 5–6 (citing 52 U.S.C. § 20307).

F.3d 969, 974 n.7 (9th Cir. 2008) (identifying a "less rigorous" causation threshold at the dismissal stage of the proceedings (citations omitted)).  When a "chain of causation 'involves numerous third parties' whose 'independent decisions' collectively have a 'significant effect' on plaintiffs' injuries, the Supreme Court and [the Ninth Circuit] have found the causal chain too weak to support standing at the pleading stage."  *Maya*, 658 F.3d at 1070 (citations omitted).

The Federal Defendants urge the Court to adopt the same conclusion as *Segovia v. United States*.  There, in an equal protection challenge to UOCAVA and a related Illinois absentee voting law distinguishing between territories, the Seventh Circuit concluded that the plaintiffs' injuries were not traceable to UOCAVA:

> Federal law *requires* Illinois to provide absentee ballots for its former residents living in the Northern Mariana Islands, but it does not *prohibit* Illinois from providing such ballots to former residents in Guam, Puerto Rico, and the Virgin Islands.  State law could provide the plaintiffs the ballots they seek; it simply doesn't.  Instead, it adds (by way of subtraction from the definition of the United States) only American Samoa to the roster of territories that may take advantage of the overseas voting procedures.  In short, the reason the plaintiffs cannot vote in federal elections in Illinois is not the UOCAVA, but Illinois' own election law.

> To be sure, federal law *could have* required Illinois to provide the plaintiffs absentee ballots.  But that does not render federal law the cause of the plaintiffs' injuries.

*Segovia*, 880 F.3d at 388.  The Court agrees that UOCAVA requires states to take specified affirmative actions, *see* 52 U.S.C. § 20302, but does not restrict a state's ability to confer absentee voting rights to former residents who move to territories other than the NMI.  *See* 52 U.S.C. § 20310(6) & (8) (excluding the NMI from the definition of "States" and "United States" which include Puerto Rico, Guam, the U.S. Virgin Islands, and American Samoa).[10]  Nevertheless, the Court declines to apply *Segovia* here.  While UOCAVA does not prevent Hawaiʻi from allowing Plaintiffs to vote absentee, Plaintiffs' injury is not limited to the inability to vote. Their primary allegation is that UOCAVA, UMOVA, and HAR § 3-177-600 treat citizens residing overseas or in the NMI favorably.  Hawaiʻi law alone may prevent Plaintiffs from *voting* absentee, but it is not the exclusive source of the identified *disparate treatment*.  UOCAVA bears equal responsibility for that purported injury.[11]  Accordingly, Plaintiffs' asserted injuries are traceable to UOCAVA and the Federal Defendants.

---

[10]  As such, Takahashi's and Kahou's misconception that UOCAVA constrains the states and that a broadening of absentee voting rights would subject Hawaiʻi to an enforcement action is unfounded.  Concern about an unauthorized expansion of rights is also belied by HRS § 15D-2, which authorizes absentee voting by U.S. citizens born outside of the United States who have never resided in the United States or registered to vote in any state if their parents or guardians last resided in Hawaiʻi before moving overseas.

[11]  Indeed, if UOCAVA facilitated absentee voting for citizens moving to any territory, as it does for citizens moving overseas, Hawaiʻi would be required to follow suit.

C.    <u>Redressability</u>

Finally, Plaintiffs are required to demonstrate that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth*, 528 U.S. at 181; *see Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010).  This burden is "relatively modest."  *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) (internal quotation marks and citation omitted). Plaintiffs "need not demonstrate that there is a 'guarantee' that [their] injuries will be redressed by a favorable decision."  *Id.* (some internal quotation marks and citation omitted).  Instead, a "'substantial likelihood' that the relief sought would redress the injury" will suffice.  *Id.* (some internal quotation marks and citation omitted).

But a plaintiff cannot establish redressability if "a favorable judicial decision would not require the defendant to redress [the] claimed injury . . . unless [he or] she adduces facts to show that the defendant or a third party are nonetheless likely to provide redress as a result of the decision."  *Id.* (citations omitted).  Similarly, if the federal court lacks the authority to issue relief that would redress a plaintiff's claimed injury, there is no redressability.  *See id.* (citations omitted); *Juliana v. United States*, 947 F.3d 1159, 1170 (9th Cir. 2020) ("To establish Article III redressability, the plaintiffs must show that the relief they seek is both (1) substantially likely to redress their injuries; and (2) within the district court's

power to award." (citation omitted)).  In assessing the scope of the court's remedial power, a plaintiff's claim is assumed to have legal merit.  *See M.S.*, 902 F.3d at 1083 (citation omitted).

After reviewing Plaintiffs' requested remedies, the Court concludes that Plaintiffs have not established redressability.  Plaintiffs seek (1) an order declaring that UOCAVA, UMOVA, and HAR § 3-177-600 violate the Fifth and Fourteenth Amendments and (2) a preliminary and permanent order enjoining Defendants to accept applications to vote absentee in future federal elections and expanding voting rights to all former Hawaiʻi citizens, including those living in each territory.  ECF No. 73 at 40–41.  The Court addresses each in turn.  *See*, *e.g.*, *M.S.*, 902 F.3d at 1084.

1.    <u>Declaration of Unconstitutionality</u>

In evaluating redressability, the Court must ask whether the disparate treatment or inability to vote absentee would be redressed by a declaration that UOCAVA, UMOVA, and HAR § 3-177-600 violate the Fifth and Fourteenth Amendments by defining the "United States" and "territorial limits of the United States" in a discriminatory manner among former Hawaiʻi residents.  Plaintiffs failed to address this issue in their Opposition but argued in their supplemental memorandum that a declaration, coupled with their requested injunctive relief, would redress their injuries.  ECF No. 96 at 7–8.  Plaintiffs also aver that a

16

declaration alone — UOCAVA are UMOVA are unconstitutional because they include Puerto Rico, Guam, the U.S. Virgin islands, and American Samoa in the definition of "United States" — could compel Defendants to allow them to vote by enforcing the statutes without that definition. *Id.* at 8–9.

Because Plaintiffs ultimately want to vote absentee in federal elections, a declaration that UOCAVA, UMOVA, and HAR § 3-177-600 violate the Fifth and Fourteenth Amendments, without more, will not require Defendants to redress Plaintiffs' claimed injuries. *See*, *e.g.*, *Juliana*, 947 F.3d at 1170 (holding that "a declaration that the government is violating the Constitution" is relief that "alone is not substantially likely to mitigate the plaintiffs' asserted concrete injuries" and "is unlikely by itself to remediate their alleged injuries absent further court action" (citations omitted)). In other words, a declaration that the laws are unconstitutional would not enable Plaintiffs to vote absentee. And Plaintiffs have not adduced facts suggesting that Defendants or a third party would redress the situation based solely on the issuance of the requested declaration.

Plaintiffs' more precise conceptualization of declaratory relief presented in its supplemental memorandum, in which the subject territories are excluded from the definition of "United States," could potentially result in a different outcome. If Puerto Rico, Guam, the U.S. Virgin islands, and American Samoa are not part of the "United States," Plaintiffs would theoretically be treated like citizens who

17

move overseas or to the NMI under UOCAVA, UMOVA, and HAR § 3-177-600.

Plaintiffs' present request for declaratory relief is not pled in this manner, however.

Because it appears that amendment could *potentially* cure this defect,[12] the Court

grants Plaintiffs leave to do so.[13]  *See Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 768

(9th Cir. 2018) ("In the ordinary appeal, we might consider whether amendment of

the complaint could cure the defects in the standing allegations." (citation

omitted)); *see Maya*, 658 F.3d at 1072 (permitting amendment to cure deficiencies

concerning standing).

### 2.   Expansion of Voting Rights to All Territories

Plaintiffs' second requested remedy — an order requiring Defendants to (1)

accept Plaintiffs' applications to vote absentee in future federal elections in

Hawaiʻi and (2) expand voting rights to all former Hawaiʻi citizens, including

those in all territories — would arguably redress the alleged injuries because

Plaintiffs would be able to vote.  However, the Court lacks the power to expand the

existing laws.

---

[12]  In allowing amendment, the Court does not suggest that *any* amendment will satisfy the redressability prong.  The Court will carefully review any amended complaint to ensure that Plaintiffs establish redressability.

[13]  The Federal Defendants advocate against amendment because Plaintiffs have already twice amended the complaint.  But this is the first time the Court has reviewed the sufficiency of the pleading.

The parties' redressability arguments primarily focus on the requested injunctive relief, with an emphasis on the propriety of contraction or expansion of rights. Plaintiffs argue that even a contraction of rights — eliminating the favorable treatment enjoyed by former Hawai'i residents who move to the NMI — would fully redress their equal protection claim, ECF No. 84 at 29, but this cannot be so because removing the distinction would not authorize Plaintiffs to vote absentee in federal elections, nor address their disparity with former Hawai'i residents who move overseas.[14] In any event, whether contraction or expansion would ultimately be the appropriate remedy does not guide the Court's redressability analysis.

Here, the salient inquiry is whether the Court has the authority to force Defendants to expand voting rights, as this is the relief presently sought by Plaintiffs.[15] The Court is not convinced it has the power to order Defendants to confer rights that do not currently exist. The Ninth Circuit has explained that:

---

[14] The *Segovia* court had "serious doubts that the plaintiffs' injury with respect to the equal-protection claim is 'likely to be redressed by a favorable judicial decision' against the federal defendants" and presumed that the proper remedy would be to extend voting rights to none of the territories. *Segovia*, 880 F.3d at 389 n.1 (citation omitted).

[15] In their supplemental memorandum, Plaintiffs claim to merely ask the Court "to enjoin defendants from enforcing a discriminatory restriction on voter eligibility that violates equal protection." ECF No. 96 at 10. The SAC demonstrates otherwise.

> Federal Courts do have jurisdiction and power to pass upon the constitutionality of Acts of Congress, but we are not aware of any decision extending this power in Federal Courts to order Congress to enact legislation.   To do so would constitute encroachment upon the functions of a legislative body and would violate the time-honored principle of separation of powers of the three great departments of our Government.   *This principle is equally applicable to the power of a Federal Judge to order a state legislative body to enact legislation*.   The enactment of legislation is not a ministerial function subject to control by mandamus, prohibition or the injunctive powers of a court.

*M.S.*, 902 F.3d at 1087 (some formatting and citation omitted).[16]  Indeed, federalism principles  "'counsel against' awarding 'affirmative injunctive and declaratory relief' that would require state officials to repeal an existing law and enact a new law proposed by plaintiffs."  *Id.* (footnote and citation omitted). Similarly,  "[w]here the *federal* legislative process is at issue," "[s]eparation of powers concerns are also implicated."  *Id.* n.13 (citation omitted).  And "in light of the Speech and Debate Clause of the Constitution, Art. I, § 6, cl. 1, the federal courts lack jurisdiction to issue orders directing Congress to enact or amend legislation."  *Newdow v. U.S. Cong.*, 328 F.3d 466, 484 (9th Cir. 2003) (citation omitted), *rev'd on other grounds sub nom. Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004); *see also M.S.*, 902 F.3d at 1087 n.13.

---

[16]  The court acknowledged that this pronouncement may be overbroad because certain exceptions — not applicable here — can apply in narrow circumstances. *See M.S.*, 902 F.3d at 1087.

To effectuate the expansion requested by Plaintiffs, the Court would have to order federal and state officials to repeal UOCAVA, UMOVA and HAR § 3-177-600 and enact new laws/rules or amend the foregoing to grant Plaintiffs (and those similarly situated) absentee voting rights.[17]  It is without the power to do so.[18]  As a result, Plaintiffs have not established redressability.

In their supplemental memorandum, Plaintiffs request leave to amend should the Court determine that standing is lacking.  ECF No. 96 at 13.  Plaintiffs propose an amendment clarifying that their remedy would not necessitate an order to enact legislation.[19]  *See id.*  The Court has already authorized leave to amend with respect to the requested declaratory relief and concludes that an amendment could *potentially* address the deficiencies with respect to Plaintiffs' requested injunctive relief.  Plaintiffs' amendments may not exceed the scope contemplated in this Order and the amended complaint is due by May 14, 2021.

---

[17]  Unlike the cases relied upon by Plaintiffs, where prohibiting the enforcement of an unconstitutional provision restores the rights at issue, Plaintiffs ask the Court to confer rights that do not currently exist to former Hawaiʻi residents living in specified territories.

[18]  *See*, *e.g.*, *Newdow*, 328 F.3d at 484 ("Because the words that amended the Pledge were enacted into law by statute, the district court may not direct Congress to delete those words[.]").

[19]  Plaintiffs are cautioned that simply distinguishing *M.S.* will not suffice, nor will a conclusory assertion that a fundamental right is at stake and can therefore be remedied through injunctive relief.

CONCLUSION

For the reasons stated herein, Plaintiffs have not established the redressability element of standing.  Accordingly, the Court GRANTS the Federal Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction, ECF No. 74, as well as the Hawai'i Defendants' Joinders.  ECF Nos. 78–80.  However, the dismissal is with leave to amend.  Plaintiffs' deadline to file an amended complaint is May 14, 2021.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, April 23, 2021.



Jill A. Otake
United States District Judge

Civil No. 20-00433 JAO-RT; *Reeves, et al. v. Nago, et al.*; ORDER GRANTING FEDERAL DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION