IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| VICENTE TOPASNA BORJA, *et al.*, | CIVIL NO. 20-00433 JAO-RT |
| Plaintiffs, | ORDER DENYING FEDERAL DEFENDANTS' SECOND MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION |
| vs. | |
| SCOTT NAGO, in his official capacity as Chief Election Officer for the Hawaii Office of Elections, *et al.*, | |
| Defendants. | |

**ORDER DENYING FEDERAL DEFENDANTS' SECOND MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION**

Plaintiffs Vicente Topasna Borja, Edmund Frederick Schroeder, Jr., Ravinder Singh Nagi, Patricia Arroyo Rodriguez, Laura Castillo Nagi, and Equally American Legal and Defense and Education Fund (collectively, "Plaintiffs") challenge the constitutionality of the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), codified at 52 U.S.C. §§ 20301 to 20311, Hawaii's Uniform Military and Overseas Voters Act ("UMOVA"), codified at Hawaiʻi Revised Statutes ("HRS") §§ 15D-1 to -18, and Hawaiʻi Administrative Rules ("HAR") § 3-177-600.  The Federal Defendants — United States of America, Lloyd J. Austin, III, Federal Voting Assistance Program, and David Beirne —

again seek dismissal for lack of Article III standing.[1]  For the following reasons,

the Court DENIES the Federal Defendants' Second Motion to Dismiss for Lack of

Subject-Matter Jurisdiction ("Motion").  ECF No. 107.

## BACKGROUND

### A.    Factual History

Plaintiffs — all former Hawaiʻi residents[2] — allege that UOCAVA,

UMOVA, and HAR § 3-177-600 preclude them from voting in Hawaiʻi by

absentee ballot for President and Hawaii's U.S. congressional delegation because

they currently reside in Guam or the U.S. Virgin Islands.  ECF No. 105 ¶¶ 1–2,

14–20.  Enacted in 1986, UOCAVA's purpose was to "facilitate absentee voting

by United States citizens, both military and civilian, who are overseas."  *Id.* ¶ 44

(citing H.R. Rep. No. 99-765, at 5 (1986), *reprinted in* 1986 U.S.C.C.A.N. 2009,

2009)).  Overseas voters include absent uniformed services voters and those

residing outside the United States who (1) are qualified to vote in the place they

were last domiciled before leaving the United States and (2) who would be

---

[1]  Defendants Scott Nago ("Nago") and Glen Takahashi ("Takahashi")
(collectively, "Hawaiʻi Defendants") join in the Federal Defendants' redressability
arguments.  ECF Nos. 109–110.

[2]  Or, in the case of Equally American Legal and Defense and Education Fund, has
members who are former Hawaiʻi residents.  ECF No. 105 ¶ 20.

qualified to vote in the place last domiciled before leaving the United States but for their current residence outside the United States. *Id.* ¶ 48 (citing 52 U.S.C. § 20310(5)(B)–(C)). "States" and the territorial use of "United States" include a state of the United States, the District of Columbia, Puerto Rico, Guam, the Virgin Islands, and American Samoa. *Id.* ¶ 49 (citing 52 U.S.C. § 20310(6) & (8)). The Northern Mariana Islands ("NMI") is excluded from these definitions. *Id.* ¶ 50.

UMOVA authorizes U.S. citizens who are former Hawaiʻi residents and living outside the United States to vote by absentee ballot in federal elections. *Id.* ¶¶ 2, 52 (citing HRS § 15D-1 to -18). It defines "United States" as "the several states, the District of Columbia, Puerto Rico, the United States Virgin Islands, and any territory or insular possession subject to the jurisdiction of the United States." *Id.* ¶ 53 (quoting HRS § 15D-2). While UMOVA does not itself distinguish between the NMI and other territories, through administrative rules, Hawaiʻi allows former Hawaiʻi citizens now residing in the NMI to vote absentee in federal elections like overseas voters.[3] *Id.* (citing HAR § 3-177-600). UMOVA additionally permits absentee voting by U.S. citizens born outside the United States who have never resided in the United States or registered to vote in any state, if

---

[3] HAR § 3-177-600 authorizes the issuance of ballot packages to voters covered by UOCAVA. Because UOCAVA excludes the NMI from the definition of "states" and territorial use of "United States," U.S. citizens residing in the NMI are treated as overseas voters and therefore able to vote absentee.

their parents or guardians last resided in Hawaiʻi and would have been eligible to vote there before moving overseas.  *Id.* ¶ 54 (citing HRS § 15D-2).  As a result, U.S. citizens who have never resided in the United States can vote in Hawaii's federal elections while former Hawaiʻi residents lose the right to participate in such elections if they move to Guam, the U.S. Virgin Islands, American Samoa, or Puerto Rico.  *Id.*

Plaintiffs challenge the distinction in UOCAVA, UMOVA, and HAR § 3-177-600 between U.S. citizens residing in the NMI, other insular territories, or in a foreign country, with those residing in Guam, the U.S. Virgin Islands, American Samoa, or Puerto Rico.  *Id.* ¶¶ 2, 51, 62.

**B.    Procedural History**

Plaintiffs commenced this action on October 8, 2020.  On October 29, 2020, they filed an Amended Complaint.  ECF No. 39.  Pursuant to the Stipulation Permitting Leave to Plaintiffs to File Second Amended Complaint and Order, *see* ECF No. 72, Plaintiffs filed a Second Amended Complaint ("SAC") on December 18, 2020.  ECF No. 73.

On January 14, 2021, the Federal Defendants filed a Motion to Dismiss for Lack of Subject-Matter Jurisdiction, *see* ECF No. 74, and were joined in part by

the Hawaiʻi Defendants.[4]  ECF Nos. 78–80.  The Court issued an Order Granting

Federal Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction

("Dismissal Order"), concluding that Plaintiffs established an injury in fact and

traceability but not redressability, and gave Plaintiffs leave to amend.  ECF No.

102; *see also Reeves v. Nago*, __ F. Supp. 3d__, 2021 WL 1602397 (D. Haw. Apr.

23, 2021).

On May 14, 2021, Plaintiffs filed a Third Amended Complaint ("TAC").

ECF No. 105.  The TAC asserts a single 42 U.S.C. § 1983 claim — UOCAVA and

UMOVA violate the Equal Protection and Due Process Clauses of the Fifth and

Fourteenth Amendments[5] by protecting the voting rights of certain former Hawaiʻi

residents based on whether they live overseas or in specified territories.  *Id.* at 40.

Plaintiffs pray for:  (1) an order (a) declaring that UOCAVA, UMOVA, and

HAR § 3-177-600 violate the Fifth Amendment, the Fourteenth Amendment, and

---

[4]  At the time, the Hawaiʻi Defendants also included Kathy Kaohu, but she was
recently dismissed.  ECF No. 106.

[5]  Plaintiffs again allege a violation of 42 U.S.C. § 1983 but "one cannot go into
court and claim a 'violation of § 1983'—for § 1983 by itself does not protect
anyone against anything."  *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 978
(9th Cir. 2004) (some internal quotation marks and citation omitted).  This is
because § 1983 "does not create any substantive rights; rather it is the vehicle
whereby plaintiffs can challenge actions by governmental officials."  *Id.* (internal
quotation marks and citation omitted).  Therefore, the Court will treat Plaintiffs'
claim as alleging violations of the Fifth and Fourteenth Amendments.

§ 1983 by allowing former Hawaiʻi residents living in foreign countries or the NMI to vote absentee while disallowing those living in Puerto Rico, Guam, the U.S. Virgin Islands, or American Samoa from doing so, (b) striking and ordering unenforceable the inclusion of the "the Commonwealth of Puerto Rico, Guam, the Virgin Islands, and American Samoa" in UOCAVA's definition of "United States," and (c) striking and ordering unenforceable the inclusion of "Puerto Rico, the United States Virgin Islands, and any territory or insular possession subject to the jurisdiction of the United States" in the UMOVA's definition of "United States"; (2) a preliminary and permanent order enjoining the enforcement of UOCAVA, UMOVA, and HAR § 3-177-600 in a manner that violates the Fifth or Fourteenth Amendments or § 1983; (3) attorneys' fees and costs; and (4) further just and appropriate relief. *Id.* at 42–44.

On June 14, 2021, the Federal Defendants filed the present Motion, *see* ECF No. 107, and the Hawaiʻi Defendants filed Joinders. ECF Nos. 109–110. On July 16, 2021, Plaintiffs filed an Opposition, Nago filed a Partial Opposition, and Takahashi filed a Joinder to the Partial Opposition. ECF Nos. 121–123. The Federal Defendants filed their Reply on July 30, 2021. ECF No. 125. The Court heard the Motion on August 13, 2021. ECF No. 127.

## LEGAL STANDARD

Under Federal Rule of Procedure ("FRCP") 12(b)(1), a district court must dismiss a complaint if it lacks subject matter jurisdiction to hear the claims alleged in the complaint. *See* Fed. R. Civ. P. 12(b)(1). "Standing is a threshold matter central to our subject matter jurisdiction." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under [FRCP] 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (emphasis and citations omitted). In determining constitutional standing, the trial court has the authority "to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Id.* (internal quotation marks and citations omitted). The court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party" when "ruling on a motion to dismiss for want of standing." *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see Confederated Tribes & Bands of Yakama Nation v. Yakima County*, 963 F.3d 982, 989 (9th Cir. 2020) (quoting *Warth*, 422 U.S. at 501).

## DISCUSSION

The Federal Defendants again seek dismissal for lack of subject matter jurisdiction due to the absence of Article III standing, namely traceability and

7

redressability.[6]  The Hawaiʻi Defendants join in the Federal Defendants'
redressability argument.

Article III of the Constitution limits the jurisdiction of the federal courts to
certain "Cases" and "Controversies."  *See Clapper v. Amnesty Int'l USA*, 568 U.S.
398, 408 (2013).  To establish "standing" to sue in federal court, a plaintiff must
have "'(1) suffered an injury in fact, (2) that is fairly traceable to the challenged
conduct of the defendant, and (3) that is likely to be redressed by a favorable
judicial decision.'"  *Gill v. Whitford*, __ U.S. __, 138 S. Ct. 1916, 1929 (2018)
(quoting *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1547 (2016)).  As the
party invoking federal jurisdiction, the plaintiff must establish these elements.  *See*
*Spokeo*, __ U.S. __, 136 S. Ct. at 1547 (citing *FW/PBS, Inc. v. City of Dallas*, 493
U.S. 215, 231 (1990)).  At the pleading stage of a case, "the plaintiff must 'clearly .
. . allege facts demonstrating' each element."  *Id.* (alteration in original) (quoting

---

[6]  To the extent the Federal Defendants incorporate by reference previous
arguments and filings, *see* ECF No. 107-1 at 7, the Court does not consider them.
*See Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996) ("[T]he
incorporation of substantive material by reference is not sanctioned by the federal
rules at issue, and the district court did not abuse its discretion in striking the
incorporations."); *Williams v. County of Alameda*, 26 F. Supp. 3d 925, 947 (N.D.
Cal. 2014) ("[T]he Court will not consider the arguments that Plaintiff improperly
seeks to incorporate by reference.  This Court only considers arguments that are
specifically and distinctively raised by the parties in their briefs." (citing *Indep.*
*Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003)); *Seto v.*
*Thielen*, Civil No. 10-00351 SOM-BMK, 2010 WL 2612603, at *3 (D. Haw. June
28, 2010) ("Plaintiffs may not incorporate by reference facts and arguments
previously made.").

*Warth*, 422 U.S. at 518) (footnote omitted).  A plaintiff exclusively seeking declaratory and injunctive relief is required to additionally "show a very significant possibility of future harm."  *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (citation omitted).  And a plaintiff "must demonstrate standing separately for each form of relief sought."  *Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 815 (9th Cir. 2017) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)) (internal quotation marks omitted)).

When a plaintiff lacks constitutional standing, a suit "is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit."  *City of Oakland v. Lynch*, 798 F.3d 1159, 1163 (9th Cir. 2015) (internal quotation marks and citation omitted); *see City of Los Angeles v. County of Kern*, 581 F.3d 841, 845 (9th Cir. 2009).

As a preliminary matter, the Court addresses the Federal Defendants' reassertion of arguments — already rejected by the Court — to obtain reconsideration of the Dismissal Order.  The Federal Defendants did not seek reconsideration of the Dismissal Order and their deadline to do so has long passed.  *See* Local Rule 60.1 (imposing a 14-day deadline to file a motion for reconsideration based on manifest error of law or fact).  Although there is no basis to revisit the injury in fact and traceability analyses in the Dismissal Order given

9

the similarity of allegations in the TAC with respect to those prongs, the Court addresses the fallacy of the Federal Defendants' contentions on these points.

## A.   Injury in Fact

Conflating the injury in fact and traceability prongs, the Federal Defendants unsuccessfully attempt to cast Plaintiffs' disparate treatment claim as an abstract injury.[7]  They argue that "the Court erred in allowing Plaintiffs to conflate their inability to vote absentee—an undisputed Article III injury, which the Court correctly recognized is traceable to 'Hawai'i law alone,' *id.*—with some separate, abstract harm of 'disparate treatment.'"  ECF No. 107-1 at 14 (footnote omitted).  Plaintiffs counter that the Court correctly found that their injury is the denial of equal access to voting.  ECF No. 121 at 16.  Although the Hawai'i Defendants dispute Plaintiffs' right to vote absentee in Hawai'i elections, even they concede that for standing purposes, Plaintiffs' allegations regarding the denial of equal treatment sufficiently identify an injury in fact.  ECF No. 122 at 3–6; ECF No. 123 at 3.

---

[7]  Although the Federal Defendants raise this argument under traceability, it concerns Plaintiffs' injury in fact.  In connection with their prior motion to dismiss, the Federal Defendants claimed that Plaintiffs recharacterized their injury as unequal treatment in response to the motion when the equal protection argument was (and continues to be) the premise of this action and was clearly articulated in the SAC.  *See Reeves*, __ F. Supp. 3d at __, 2021 WL 1602397, at *3.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, __ U.S. __, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *see Maya*, 658 F.3d at 1069. Allegations of possible future injury are insufficient; the "threatened injury must be *certainly impending* to constitute injury in fact." *Clapper*, 568 U.S. at 409 (internal quotation marks and citation omitted).

As before, there is nothing "abstract" about Plaintiffs' disparate treatment claim; it is the sole basis for this litigation. The Federal Defendants persistently mischaracterize the disparate treatment claim as Plaintiffs' recasting of injuries when Plaintiffs have advanced this theory since day one. *See* ECF No. 1. Plaintiffs continue to allege, in pertinent part:

> 3. This disparate treatment violates the U.S. Constitution's guarantee of equal protection. Equal protection rights for residents of U.S. Territories are guaranteed by either the Equal Protection Clause of the Fourteenth Amendment or the equal-protection component of the Due Process Clause of the Fifth Amendment to the U.S. Constitution. *See Examining Bd. v. Flores de Otero*, 426 U.S. 572, 600 (1976); *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 668 (1974).
>
> 4. Disparate treatment with respect to voting is an especially grievous constitutional violation because voting is a fundamental right. As the Supreme Court recognized in *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886), nearly one hundred and thirty-five years ago, "the political franchise of voting" is a "fundamental political right, because [it is] preservative of all rights." And more than fifty-six years ago, the Supreme Court stated that "[n]o

11

right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live.  Other rights, even the most basic, are illusory if the right to vote is undermined. Our Constitution leaves no room for classification of people in a way that unnecessarily abridges this right." *Wesberry v. Sanders*, 376 U.S. 1, 17–18 (1964).  Yet former residents of Hawaii who relocate to Guam, the U.S. Virgin Islands, American Samoa, or Puerto Rico are not afforded this right with respect to the federal election for President or voting members of Congress, even though they would be so enfranchised if they relocated to anywhere else in the world, including the NMI.

. . . .

6.     The federal and state laws at issue violate the fundamental guarantee of equal protection with respect to voting rights. Congress selectively extended the franchise only to some disenfranchised U.S. citizens residing outside the States, while denying it to others who are similarly situated.   Under UOCAVA, States are required to allow former state citizens residing outside the United States or in the NMI to vote on an absentee basis in federal elections.  But under the same law, States are free to deny that right to similarly situated persons residing in the other U.S. Territories overseas.

7.     The Constitution does not permit Congress and the States to pick and choose which voters living outside the States are able to maintain their right to vote for President and voting representation in the U.S. House and Senate.

8.     The discriminatory injury inflicted by these laws is aggravated by the fact that UOCAVA and Hawaii law single out a narrow group of former state residents for disfavored treatment: those who move to Guam, the U.S. Virgin Islands, American Samoa, or Puerto Rico.  Since 1898, residents of America's overseas territories have been improperly relegated to a form of second-class citizenship based on the concern that these areas were populated by an [sic] "alien races" differing in "religion, customs, laws, methods of taxation, and modes of thought."

12

*Downes v. Bidwell*, 182 U.S. 244, 287 (1901). The discriminatory application of voting rights under UOCAVA and Hawaii law is an extension of this injustice.

. . . .

12. Plaintiffs are individuals who are injured by virtue of the Defendants' disparate treatment of former state residents residing in the Territories and overseas, along with Equally American. . . .

. . . .

63. By treating similarly situated former state residents differently based on where they reside overseas, UOCAVA and Hawaii UMOVA violate the equal-protection and due process guarantees of the Fifth and Fourteenth Amendments and 42 U.S.C.§ 1983. The two acts protect the voting rights of *certain* U.S. citizens who live outside the States in *certain* overseas Territories or foreign countries, while denying those rights to similarly situated U.S. citizens who live in *other* overseas Territories.

ECF No. 105.[8] Accepting Plaintiffs' allegations as true for the purposes of this

Motion, as it must, *see Warth*, 422 U.S. at 501, the Court finds that the TAC

plainly asserts disparate treatment as an injury preventing Plaintiffs from voting

absentee.

> When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this

---

[8] Like the SAC, the TAC devotes an entire section to equal protection principles. *See* ECF No. 73 ¶¶ 56–62; ECF No. 105 ¶¶ 56–62.

> variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

*Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) (citation omitted).

The Federal Defendants rely on *Segovia v. United States*, 880 F.3d 384 (7th Cir. 2018), in arguing that Court erred by recognizing disparate treatment as an injury in fact.  ECF No. 107-1 at 14 n.3 ("The same argument—that Plaintiffs have suffered 'disparate treatment' separate and apart from their actual inability to vote—would have been available in *Segovia*.  Nevertheless, the Seventh Circuit held that those plaintiffs lacked standing.").  The *Segovia* court *recognized disparate treatment as an injury in fact*, as this Court previously explained:

> Plaintiffs' equal protection claim appears to be based on two theories: (1) disparate treatment between residents of territories and residents living overseas and in the NMI and (2) disparate treatment between territories.  Under either theory, Plaintiffs have sufficiently alleged an injury in fact for standing purposes.  *See Segovia v. United States*, 880 F.3d 384, 387–88 (7th Cir. 2018) (concluding that the plaintiffs, who "argued that the UOCAVA and Illinois law violate the Due Process and Equal Protection Clauses by permitting residents of some territories to vote in federal elections but not others" and "that the statutes infringe upon their right to travel guaranteed by the Due Process Clause," had "suffered an injury-in-fact sufficient to confer Article III standing").

*Reeves*, __ F. Supp. 3d at __, 2021 WL 1602397, at *4.  The *Segovia* court's ultimate conclusion that there was no standing *due to a lack of traceability*, which

the Court declined to adopt, has no bearing on whether disparate treatment is a legitimate injury in fact.  Indeed, it is well established that unequal treatment constitutes an injury in fact.  *See Harrison v. Kernan*, 971 F.3d 1069, 1074 (9th Cir. 2020) (explaining that a denial of "'equal treatment under law,' . . . is 'a judicially cognizable interest that satisfies the case or controversy requirement of Article III.'" (citation omitted)).  For these reasons, the Court again concludes that Plaintiffs have alleged an injury in fact for standing purposes.

## B.    Fairly Traceable to UOCAVA or the Federal Defendants

The Federal Defendants' argument that Plaintiffs' injuries are not traceable to them or UOCAVA rests on the flawed premise, discussed above, that disparate treatment is not a distinct injury.  Plaintiffs and the Hawai'i Defendants contend that the Court properly concluded that Plaintiffs' injuries are equally traceable to UMOVA and UOCAVA.  ECF No. 121 at 18; ECF No. 122 at 6; ECF No. 123 at 3.

The causation inquiry focuses on "whether the alleged injury can be traced to the defendant's challenged conduct, rather than to that of some other actor not before the court."  *See Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1152 (9th Cir. 2000) (citations omitted).  In other words, "the causal connection put forward for standing purposes cannot be too speculative, or rely on conjecture about the behavior of other parties, but need not be so airtight at this

stage of the litigation as to demonstrate that the plaintiffs would succeed on the merits."  *Id.* (citation omitted); *see Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 974 n.7 (9th Cir. 2008) (identifying a "less rigorous" causation threshold at the dismissal stage of the proceedings (citations omitted)).  "Causation can be established 'even if there are multiple links in the chain,' as long as the chain is not 'hypothetical or tenuous.'"  *Juliana v. United States*, 947 F.3d 1159, 1169 (9th Cir. 2020) (quoting *Mendia v. Garcia*, 768 F.3d 1009, 1012 (9th Cir. 2014); *Maya*, 658 F.3d at 1070).

In its Dismissal Order, the Court held:

> While UOCAVA does not prevent Hawai'i from allowing Plaintiffs to vote absentee, Plaintiffs' injury is not limited to the inability to vote.  Their primary allegation is that UOCAVA, UMOVA, and HAR § 3-177-600 treat citizens residing overseas or in the NMI favorably.  Hawai'i law alone may prevent Plaintiffs from *voting* absentee, but it is not the exclusive source of the identified *disparate treatment*.  UOCAVA bears equal responsibility for that purported injury.  Accordingly, Plaintiffs' asserted injuries are traceable to UOCAVA and the Federal Defendants.

*Reeves*, __ F. Supp. 3d at __, 2021 WL 1602397, at *5 (footnote omitted).  Put differently, the *unequal treatment* unequivocally identified by Plaintiffs derives from UOCAVA's treatment of specified territories.  It is clear that the Federal Defendants want the Court to reverse course and reach the *Segovia* court's conclusion regarding traceability, but the Court already declined to do so.  *See id.* at *5.  Again, this is merely a transparent effort to obtain untimely reconsideration

of the Dismissal Order, and the Federal Defendants offer nothing to persuade the Court to rule differently.

To "prove" that Plaintiffs' injuries are not traceable to UOCAVA, the Federal Defendants hypothesize that if Hawaiʻi allows Plaintiffs to vote absentee tomorrow, the case would be moot even if UOCAVA still contains the language purportedly causing disparate treatment.  ECF No. 107-1 at 14–15.  But it is equally true that if UOCAVA facilitated voting by U.S. citizens who reside in the territories at issue in this litigation, Hawaiʻi would be required to do so as well. Hawaiʻi Defendants' counsel confirmed this at the hearing and noted that no changes to HAR § 3-177-600 would be required to authorize the issuance of ballot packages to voters covered by UOCAVA and UMOVA.  *See* HAR § 3-177-600 ("(d) Ballot packages may generally be issued in the following contexts:  . . . (4) Pursuant to a request by a voter covered under chapter 15D, HRS, or the Uniformed and Overseas Citizens Absentee Voting Act of 1986, as amended, or any other applicable federal or state law.").  Any suggestion that the Federal Defendants bear no responsibility because Hawai'i *could* confer greater rights than UOCAVA ignores the reality that Plaintiffs would equally benefit if UOCAVA eliminated the disparate treatment; that is, the same outcome would result under either scenario.  And more importantly, indirect harm does not necessarily preclude standing.  "Causation may be found even if there are multiple links in the chain

connecting the defendant's unlawful conduct to the plaintiff's injury, and there's

no requirement that the defendant's conduct comprise the last link in the chain."

*Mendia*, 768 F.3d at 1012 (citation omitted).  The plausibility of the links

comprising the chain is the relevant concern.  *See id.* (citation omitted).  The

Hawaiʻi Defendants and UMOVA may be the final link in the chain, but the

Federal Defendants and UOCAVA are also part of the chain.[9]  The Court

accordingly arrives at the same conclusion it did before — Plaintiffs' asserted

injuries are traceable to UOCAVA and the Federal Defendants.

## C.   Redressability

Ironically, with respect to redressability, the Federal Defendants deem the

Dismissal Order (almost) satisfactory and urge the Court to apply it to again find

that Plaintiffs have not established redressability.  ECF No. 107-1 at 19.  Yet the

Federal Defendants also invite the Court to adopt their alternative grounds for

dismissal to "avoid any potential confusion on any appeal."[10]  *Id.* at 22–23 n.5.

---

[9]  The Federal Defendants contend that the Court need not accept Plaintiffs' causation theory because it is a legal conclusion.  ECF No. 125 at 9 n.1 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  But "*Twombly* and *Iqbal* are ill-suited to application in the constitutional standing context because" while courts conduct a merits analysis in the 12(b)(6) context, "the threshold question of whether plaintiff has standing (and the court has jurisdiction) is distinct from the merits of his claim."  *Maya*, 658 F.3d at 1068.  In any event, traceability exists for the reasons stated above, not based on any conclusory allegations in the TAC.

[10]  This again appears to be a ploy to seek untimely reconsideration of the Dismissal Order.

The Federal Defendants' agreement with the Dismissal Order is apparently limited to the conclusion, not the corresponding reasoning. *See id.* at 22 n.5 ("Federal Defendants believe that the ultimate conclusion of the Court's prior opinion—*i.e.*, that Plaintiffs' claims are not redressable by this Court, and that Plaintiffs therefore lack Article III standing—was correct, though for the reasons that the Government has advanced in this and prior filings."). Incredibly, while taking every opportunity to untimely challenge the Dismissal Order on grounds already considered and rejected — even where they prevailed — the Federal Defendants accuse Plaintiffs of criticizing the Dismissal Order through briefing that "reads more like a motion to reconsider—rather than any reason to conclude that their fourth complaint materially differs from their third." ECF No. 125 at 17. Plaintiffs do not seek reconsideration. They raise *new arguments* based on their *amended* remedies.

The Court declines the Federal Defendants' invitation to adopt their reasoning in this order. Had the Court been persuaded by the Federal Defendants' reasoning, the Dismissal Order would have so reflected. Any confusion rests exclusively with the Federal Defendants, as the Court *did not* hold that federal courts lack the authority to enjoin the enforcement or implementation of state or federal statutes that are unconstitutional. *See Reeves*, __ F. Supp. 3d. at __, 2021 WL 1602397, at *5–8. The Dismissal Order is only at risk of being misconstrued

19

if the relevant passages are selectively quoted or misrepresented.  And offering alternative and potentially contradictory analyses — that the Court finds unavailing in any event —  would create needless confusion.

The Hawaiʻi Defendants, who join the Federal Defendants as to redressability and have an equal interest in the dismissal of this case, understood the Court's unmistakable ruling.  ECF No. 122 at 7–8 ("[A]t no time did the Court hold or otherwise indicate that it lacks the power to enjoin the enforcement or implementation of state of federal legislation that it determines to be unconstitutional.  Instead, the Court very plainly stated that it lacks the power to 'order federal and state officials to repeal UOCAVA, UMOVA, and HAR § 3-177-600 and enact new laws/rules or amend the foregoing to grant Plaintiffs (and similarly situated) absentee voting rights' which 'do not currently exist[.]'" (citation omitted) (alteration in original)); ECF No. 123 at 3.

Redressability is the primary focus of the Court's inquiry in this Order, as it was the only element Plaintiffs failed to previously establish.  Plaintiffs must demonstrate that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth*, 528 U.S. at 181; *see Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010).  This burden is "relatively modest." *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) (internal quotation marks and citation omitted).  Plaintiffs "need not demonstrate that there

20

is a 'guarantee' that [their] injuries will be redressed by a favorable decision." *Id.* (some internal quotation marks and citation omitted). Instead, a "'substantial likelihood' that the relief sought would redress the injury" will suffice. *Id.* (some internal quotation marks and citation omitted).

But a plaintiff cannot establish redressability if "a favorable judicial decision would not require the defendant to redress [the] claimed injury . . . unless [he or] she adduces facts to show that the defendant or a third party are nonetheless likely to provide redress as a result of the decision." *Id.* (citations omitted). Similarly, if the federal court lacks the authority to issue relief that would redress a plaintiff's claimed injury, there is no redressability. *See id.* (citations omitted); *Juliana*, 947 F.3d at 1170 ("To establish Article III redressability, the plaintiffs must show that the relief they seek is both (1) substantially likely to redress their injuries; and (2) within the district court's power to award." (citation omitted)). In assessing the scope of the court's remedial power, a plaintiff's claim is assumed to have legal merit. *See M.S.*, 902 F.3d at 1083 (citation omitted).

In the TAC, Plaintiffs seek: (1) an order (a) declaring that UOCAVA, UMOVA, and HAR § 3-177-600 violate the Fifth Amendment, the Fourteenth Amendment, and § 1983[11] by allowing former Hawai'i residents living in foreign

---

[11] As mentioned earlier, § 1983 is a vehicle to challenge the actions of governmental officials, but a plaintiff cannot claim a § 1983 violation because it

(continued . . .)

countries or the NMI to vote absentee while disallowing those living in Puerto Rico, Guam, the U.S. Virgin Islands, or American Samoa from doing so, (b) striking and ordering unenforceable the inclusion of the "the Commonwealth of Puerto Rico, Guam, the Virgin Islands, and American Samoa" in UOCAVA's definition of "United States," and (c) striking and ordering unenforceable the inclusion of "Puerto Rico, the United States Virgin Islands, and any territory or insular possession subject to the jurisdiction of the United States" in the UMOVA's definition of "United States"; and (2) a preliminary and permanent order enjoining the enforcement of UOCAVA, UMOVA, and HAR § 3-177-600 in a manner that violates the Fifth or Fourteenth Amendments or § 1983.  ECF No. 105 at 40–41.  Based on these remedies — which were not sought in the SAC — the Court concludes that Plaintiffs have established redressability.

### 1.   Requested Relief

In evaluating redressability, the Court considers whether the disparate treatment or inability to vote absentee would be redressed by:  a declaration that UOCAVA, UMOVA, and HAR § 3-177-600 violate the Fifth and Fourteenth Amendments, striking provisions in UOCAVA and UMOVA defining Puerto Rico, Guam, the U.S. Virgin Islands, or American Samoa as part of the "United States"

---

(. . . continued)

alone does not protect a plaintiff from anything.  *See Cholla Ready Mix*, 382 F.3d at 978.

(which currently prevents them from voting absentee), and a preliminary and permanent order enjoining the enforcement of UOCAVA, UMOVA, and HAR § 3-177-600 in a manner that violates the Fifth or Fourteenth Amendments.  Ignoring the key amendments to Plaintiffs' prayer for relief, the Federal Defendants argue that the TAC differs only in that Plaintiffs request "a slightly more specific declaratory judgment."[12]  ECF No. 107-1 at 20.  The Federal Defendants

---

[12]  The Federal Defendants also argue that Plaintiffs cannot alter the scope of the Court's Article III authority through an amended pleading.  ECF No. 107-1 at 22. As the Court previously noted, amendment is permitted to cure standing defects. *See Reeves*, __ F. Supp. 3d at __, 2021 WL 1602397, at *6 (citing *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 768 (9th Cir. 2018) ("In the ordinary appeal, we might consider whether amendment of the complaint could cure the defects in the standing allegations." (citation omitted)); *see Maya*, 658 F.3d at 1072 (permitting amendment to cure deficiencies concerning standing)).  Moreover, amendments do not alter the scope of the Court's Article III authority; they instead address shortcomings in an effort to satisfy Article III standing requirements.

The Federal Defendants further accuse Plaintiffs of pleading vague and meritless theories about favorable treatment to former Hawai'i residents living in foreign countries to sidestep a lack of subject matter jurisdiction.  ECF No. 107-1 at 17; ECF No. 125 at 13.  This theory is neither new nor vague.  Plaintiffs' disparate treatment claim has *always* been predicated in part on the distinction between citizens living in certain territories and those living in the NMI and foreign countries.  *See, e.g.*, ECF No. 1 ¶¶ 2, 53, 61; ECF No. 73 ¶¶ 2, 55, 63. Improperly conflating standing with the merits, the Federal Defendants insist that this theory is meritless and inconsistent with precedent.  ECF No. 107-1 at 17 & n.4; ECF No. 125 at 13.  But this ignores the *germane* and well-established principle that a standing analysis does not concern the merits of a claim.  *See, e.g.*, *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 665 (9th Cir. 2021) ("[A] plaintiff can have standing despite losing on the merits." (citation omitted)); *Maya*, 658 F.3d at 1068 ("Rather, 'the jurisdictional question of standing precedes, and does not require, analysis of the merits.'" (brackets and citations omitted)); *Cath.*

(continued . . .)

accordingly contend that redressability is lacking because declaratory relief alone would not require a change in Defendants' behavior, nor can the Court force Defendants to expand voting rights. *Id.* at 20–22. The Court previously determined that declaratory relief alone would not accord Plaintiffs the relief they sought because it lacked the authority to award the corresponding injunctive relief (an order mandating Defendants to allow Plaintiffs to vote absentee). *See Reeves*, __ F. Supp. 3d at __, 2021 WL 1602397, at *6–7. This is no longer true, so the Court's inquiry does not end with whether declaratory relief would adequately redress Plaintiffs. Plaintiffs' amended requested relief alters the landscape with the addition of the request to strike the provisions that prevent them from voting absentee and the deletion of the request for an order requiring Defendants to accept their applications to vote absentee and to expand voting rights to all former Hawaiʻi citizens living in any territory. The Federal Defendants insist that the Court may simply apply its prior ruling because Plaintiffs continue to ask for an order requiring Defendants to expand voting rights. ECF No. 107-1 at 19–22; ECF

---

(. . . continued)

*League for Religious & C.R. v. City & County of San Francisco*, 624 F.3d 1043, 1049 (9th Cir. 2010) (en banc) ("Nor can standing analysis, which prevents a claim from being adjudicated for lack of jurisdiction, be used to disguise merits analysis, which determines whether a claim is one for which relief can be granted if factually true."). Standing is the only issue before the Court; the merits are for another day.

No. 125 at 19.  In the SAC, Plaintiffs expressly requested "an order requiring Defendants to (1) accept Plaintiffs' applications to vote absentee in future federal elections in Hawaiʻi and (2) expand voting rights to all former Hawaiʻi citizens, including those in all territories." *Reeves*, __ F. Supp. 3d at __, 2021 WL 1602397, at *7.  Plaintiffs no longer do so.

Contrasted with the relief requested in the SAC, a declaration of unconstitutionality *coupled with* the severance of specific provisions and an order enjoining the enforcement of unconstitutional provisions in the applicable statutes, arguably removes the barrier excluding Plaintiffs from obtaining absentee ballots. That is, if Puerto Rico, Guam, the U.S. Virgin Islands, and American Samoa are not part of the "United States," and those provisions are unenforceable, Plaintiffs would be treated like citizens who move overseas or to the NMI under UOCAVA, UMOVA, and HAR § 3-177-600. *See Reeves*, __ F. Supp. 3d at __, 2021 WL 1602397, at *6.  This is significant because Plaintiffs' previously sought an affirmative order requiring Defendants to do *more* than the statutes authorize, while the present relief would confer a benefit by *eliminating* the offending provision causing Plaintiffs' alleged injuries.[13]  The foregoing adequately

---

[13]  *See Reeves*, __ F. Supp. 3d at __, 2021 WL 1602397, at *8 n.17 ("Unlike the cases relied upon by Plaintiffs, where prohibiting the enforcement of an unconstitutional provision restores the rights at issue, Plaintiffs ask the Court to confer rights that do not currently exist to former Hawaiʻi residents living in

(continued . . .)

demonstrates that the requested relief is substantially likely to redress Plaintiffs' injuries.

### 2.     The Court's Authority to Award the Requested Relief

The Court next considers whether it has the power to award the requested relief and finds that it does.  Because the parties do not challenge a federal court's ability to declare statutes unconstitutional and enjoin their enforcement, the Court limits its discussion to whether it has the authority to effectuate the requested severance.[14]

"'Generally speaking, when confronting a constitutional flaw in a statute, [courts] try to limit the solution to the problem,' severing any 'problematic portions while leaving the remainder intact.'" *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 508 (2010) (citation omitted); *see Barr v. Am. Ass'n*

---

(. . . continued)
specified territories.").  So even if the effective *result* is an "expansion" of rights, the mechanism by which that is achieved materially differs.

[14]  Neither do the Federal Defendants dispute a court's ability to conduct a severability analysis.  ECF No. 125 at 15.  Instead, they criticize Plaintiffs' severability analysis, asserting that it has no bearing on redressability.  *Id.* Severability clearly pertains to redressability here because Plaintiffs request severance of the subject statutes as a remedy and the Court's authority to accord the requested relief is a component of the redressability inquiry.  Severability and redressability are not mutually exclusive, and courts have considered severability in the context of redressability.  *See*, *e.g.*, *Lidas, Inc. v. United States*, 238 F.3d 1076, 1080 (9th Cir. 2001); *INS v. Chadha*, 462 U.S. 919, 936 (1983).

*of Pol. Consultants, Inc.*, 591 U.S. __, 140 S. Ct. 2335, 2350 (2020) (plurality opinion) ("*AAPC*")  (explaining that the "power and preference to partially invalidate a statute . . . [is] firmly established").  "Invalid portions of a federal statute are to be severed 'unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not.'"  *Nat'l Mining Ass'n v. Zinke*, 877 F.3d 845, 861–62 (9th Cir. 2017) (some internal quotation marks, brackets, and citation omitted); *see also AAPC*, 591 U.S. at __, 140 S. Ct. at 2350–51 (noting the remedial preference, when a provision of a federal statute is deemed unconstitutional, "to salvage rather than destroy the rest of the law passed by Congress and signed by the President" because there is "a decisive preference for surgical severance rather than wholesale destruction, even in the absence of a severability clause"); *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328–30 (2006) (applying the same principles to a state statute deemed unconstitutional).

Hawaiʻi law articulates similar severability principles.  *See Nat'l Ass'n for Gun Rts., Inc. v. Mangan*, 933 F.3d 1102, 1122 (9th Cir. 2019) ("Severability is a matter of state law." (internal quotation marks and citation omitted)).  HRS § 1-23 provides:  "If any provision of the Hawaii Revised Statutes, or the application thereof to any person or circumstances, is held invalid, the remainder of the Hawaii Revised Statutes, or the application of the provision to other persons or

circumstances, shall not be affected thereby."  Haw. Rev. Stat. § 1-23; *see also*

*State v. Pacquing*, 139 Hawaiʻi 302, 319, 389 P.3d 897, 914 (2016).  "The judicial

power to excise unconstitutional parts of a statute is permitted only if the

unconstitutional parts are severable from the constitutional parts of the statute."

*Pacquing*, 139 Hawaiʻi at 318, 389 P.3d at 913 (citations omitted).  Portions of a

statute that can be independently enforced "and still carry out the intent of the

legislature . . . can be upheld as constitutional."  *Id.* at 319, 389 P.3d at 914

(internal quotation marks and citation omitted).

Applying these principles, the Court could effectuate the requested relief.

Plaintiffs accordingly establish redressability.  Given Plaintiffs' satisfaction of the

injury in fact and traceability requirements, they have standing.

//

//

//

//

//

//

//

//

//

28

## CONCLUSION

For the reasons stated herein, the Court DENIES the Federal Defendants'

Second Motion to Dismiss for Lack of Subject-Matter Jurisdiction, *see* ECF No.

107, as well as the Hawaiʻi Defendants' Joinders.  ECF Nos. 109–110.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, September 2, 2021.



_____
Jill A. Otake
United States District Judge

Civil No. 20-00433 JAO-RT; *Borja, et al. v. Nago, et al.*; ORDER DENYING FEDERAL DEFENDANTS'
SECOND MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION